**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE FIRING PIN, LLC, LUCAS NELSON, DANIEL J. GEARY, NATIONAL RIFLE ASSOCIATION OF AMERICA, FIREARMS POLICY COALITION, INC., *and* SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW YORK, STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE POLICE, CHRISTINE CALLANAN, IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WAYNE COUNTY, BRIAN P. GREEN, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR MONROE COUNTY, *and* KEVIN T. FINNELL, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR GENESEE COUNTY. <br><br> Defendants. | Case No. 26-1718 <br><br> **COMPLAINT** |

The Firing Pin, LLC ("The Firing Pin"), Lucas Nelson, Daniel J. Geary, National Rifle Association of America ("NRA"), Firearms Policy Coalition, Inc. ("FPC"), and Second Amendment Foundation ("SAF") (collectively, "Plaintiffs"), by and through counsel of record, bring this Complaint against Defendants, New York officials responsible for administering and enforcing the State's laws and regulations governing the sale, transfer, disposing, transporting or shipping as merchandise of so-called "convertible pistols." In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

**INTRODUCTION**

1.    The Second Amendment to the United States Constitution protects law-abiding citizens' right to possess—and, as a necessary incident to that right, to acquire—firearms that are in common use for lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008). This includes handguns, which are "the quintessential self-defense weapon" and "the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 629.

2.    New York nonetheless enacted Chapter 55 of the Laws of 2026, Part C, Subpart A ("the Act"), which bans licensed firearms dealers and gunsmiths from selling, transferring, disposing of, transporting, or shipping as merchandise semiautomatic handguns with a cruciform trigger bar that New York deems "convertible pistol[s]," see N.Y. PENAL LAW §§ 265.00(37), (40), 265.10(10) (effective Aug. 25, 2026), a category that includes nearly every Glock and "Glock-style" pistol on the market.

3.    New York appears to have enacted the Act out of a concern that Glock and Glock-style pistols can be equipped with pistol converters—devices that enable semiautomatic pistols to function as machineguns. But those exact pistol converters are already banned under both federal and New York law; it is illegal to modify a Glock or Glock-style pistol using a pistol converter. Those bans are not at issue in this case.

4.    Glock and Glock-style pistols, themselves, are not relevantly different from any other ordinary semiautomatic handgun. That is true even though they may be illegally modified. What is more, these pistols are in common use; indeed, they are among the most popular firearms in the nation. Yet if the Act is enforced, ordinary New Yorkers will be relegated to a shrinking secondary market made up of only those pistols possessed before the law's effective date.

5.      That is a handgun ban. The fact that the ban targets only one category of popular handguns does not make it constitutional.

6.      Plaintiffs respectfully ask this Court to declare § 265.10(10) unconstitutional and enjoin its enforcement.

**PARTIES**

**Plaintiffs**

7.      Plaintiff The Firing Pin is a federally licensed firearms dealer located in Genesee County, New York. The Firing Pin is licensed under federal law to engage in the business of selling firearms at retail and is also licensed under New York law to sell firearms, including handguns, to law-abiding New York residents who satisfy all applicable federal and state requirements. In the ordinary course of its business, The Firing Pin sells, offers for sale, receives, transfers, and maintains inventory of semiautomatic handguns, including Glock pistols and other Glock-style pistols that are commonly possessed and used by law-abiding citizens for lawful purposes, including self-defense in the home. But for New York's ban on the sale or transfer of "convertible pistols," The Firing Pin would continue to acquire, stock, advertise, offer for sale, sell, and transfer such pistols to qualified customers in New York. The ban will force The Firing Pin to cease selling and offering for sale a substantial category of popular, constitutionally protected handguns; deprive The Firing Pin of sales, customer traffic, goodwill, and related revenue; and prevent The Firing Pin from assisting its customers in acquiring arms they are entitled to keep and bear. The Firing Pin faces a credible threat of enforcement, including criminal penalties and adverse licensing consequences, if it continues to sell, offer for sale, receive, or transfer covered pistols after the ban becomes operative. The Firing Pin is a member of Plaintiffs NRA, FPC, and SAF.

8.  Plaintiff Lucas Nelson is a law-abiding adult citizen of the United States and a resident of Wayne County, New York. He is eligible under federal and New York law to possess, acquire, purchase, and receive firearms, including handguns. But for New York's ban on "convertible pistols," Plaintiff Nelson would acquire Glock and Glock-style semiautomatic pistols in the future for lawful purposes, including self-defense, recreational shooting, and training. The challenged law prevents him from doing so and forces him to forgo the acquisition of arms he wishes to keep and bear, or else risk criminal prosecution and other adverse legal consequences. Plaintiff Nelson is a member of Plaintiffs NRA, FPC, and SAF.

9.  Plaintiff Daniel J. Geary is a law-abiding adult citizen of the United States and a resident of Monroe County, New York. He is eligible under federal and New York law to possess, acquire, purchase, and receive firearms, including handguns. But for New York's ban on "convertible pistols," Plaintiff Geary would acquire additional Glock and Glock-style semiautomatic pistols in the future for lawful purposes, including self-defense, recreational shooting, and training. The challenged law prevents him from doing so and forces him to forgo the acquisition of arms he wishes to keep and bear, or else risk criminal prosecution and other adverse legal consequences. Plaintiff Geary is a member of Plaintiffs NRA, FPC, and SAF.

10.  Plaintiff NRA is a nonprofit membership organization devoted to protecting the right to keep and bear arms. Founded in 1871, NRA is America's oldest civil rights organization and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. NRA has millions of members across the nation, including in New York. NRA brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights to purchase handguns banned by the Act. NRA has members

4

who would buy and/or sell handguns banned by the Act on or after May 31, 2027, but for the Act and Defendants' enforcement thereof.

11.     Plaintiff FPC is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and to protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside the State of New York. FPC brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment protected rights to purchase handguns banned by the Act. FPC has members who would buy and/or sell handguns banned by the Act on or after May 31, 2027, but for the Act and Defendants' enforcement thereof.

12.     Plaintiff SAF is a nonprofit educational foundation incorporated in 1974. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights to purchase handguns banned by the Act. SAF has members who would buy and/or sell handguns banned by the Act on or after May 31, 2027, but for the Act and Defendants' enforcement thereof.

13.    Plaintiffs NRA, FPC, and SAF recognize that Second Circuit precedent holds "that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). NRA, FPC, and SAF contend that the former line of circuit precedent is erroneous, particularly in light of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199 (2023) ("Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975))). *Cf. Conn. Citizens Def. League, Inc. v. Thody*, No. 23-724-cv, 2024 WL 177707, at *3 (2d Cir. Jan. 17, 2024) (declining to address this argument after concluding the plaintiffs' claims were moot). To the extent the Court finds that *Nnebe* nevertheless continues to control, they reserve the right to challenge the Second Circuit's precedent on this issue in an appropriate venue in this litigation.

14.    Regardless of the above, Plaintiffs NRA, FPC, and SAF can also bring a claim in equity under *Ex parte Young*, 209 U.S. 1213 (1908) on behalf of their members.

**Defendants**

15.    Defendant Letitia James is the Attorney General of the State of New York. As Attorney General, she exercises, delegates, or supervises the powers and duties of the New York State Department of Law, including the authority to enforce and defend New York's laws and regulations and to bring civil actions in the name of the State pursuant to New York Executive Law Section 63. Further, if "required by the governor," Defendant James, as Attorney General, would be required to "attend in person, or by one of [her] deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting" criminal prosecutions "as shall be specified" by the governor, and "shall exercise all the powers and perform all the duties . . . which the district attorney would otherwise be authorized or required to exercise or perform." N.Y. EXEC. LAW

6

§ 63(2). Defendant James's official address is New York State Office of the Attorney General, The Capitol, Albany, NY 12224. Defendant James is sued in her official capacity.

16.     Defendant Steven G. James is the Superintendent of the New York State Police. As Superintendent, he is expressly authorized to promulgate rules, regulations, and policies necessary to effectuate New York's ban on "convertible pistols," and he is required to publish, before the Act's effective date and annually thereafter, a list of pistols that he has determined to be "convertible pistol[s]." 2026 N.Y. LAWS ch. 55, pt. C, subpt. A, § 4; *see also* N.Y. PENAL LAW §§ 265.00(37), 265.10(10). Defendant James's official address is New York State Police, 1220 Washington Avenue, Building 22, Albany, NY 12226. Defendant James is sued in his official capacity.

17.     Defendant Christine Callanan is the Wayne County District Attorney and chief prosecutor of the county. Defendant Callanan "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which [s]he serves." *People v. Di Falco,* 44 N.Y.2d 482, 486 (N.Y. Ct. App. 1978); N.Y. CNTY. LAW § 700(1). Defendant Callanan's official address is 30 Church Street, Lyons, NY 14489. Defendant Callanan is sued in her official capacity.

18.     Defendant Brian P. Green is the Monroe County District Attorney and chief prosecutor of the county. Defendant Green "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which he serves." *Di Falco,* 44 N.Y.2d at 486; N.Y. CNTY. LAW § 700(1). Defendant Green's official address is 47 South Fitzhugh Street, Rochester, NY 14614. Defendant Green is sued in his official capacity.

19.     Defendant Kevin T. Finnell is the Genesee County District Attorney and chief prosecutor of the county. Defendant Finnell "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which he

serves." *Di Falco,* 44 N.Y.2d at 486; N.Y. CNTY. LAW § 700(1). Defendant Finnell's official address is One West Main Street, Batavia, NY 14020. Defendant Finnell is sued in his official capacity.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

21. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, 2202; 42 U.S.C. §§ 1983 and 1988; and the *Ex parte Young* doctrine. This action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of the rights, privileges, or immunities secured by the United States Constitution.

22. Venue lies in this Court under 28 U.S.C. § 1391, as at least one Defendant is a resident of this District and the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

23. Plaintiffs bring this action to challenge 2026 N.Y. LAWS ch. 55, pt. C, subpt. A ("the Act"), which was signed into law by the Governor on May 27, 2026.

### I.    BACKGROUND

24. The Act amends the New York Penal Law to provide that "[a]ny dealer in firearms or gunsmith who, on or after May thirty-first, two thousand twenty-seven, sells, transfers, disposes of, or transports or ships as merchandise a convertible pistol shall be guilty of a class D felony." N.Y. PENAL LAW § 265.10(10). The Act authorizes the Superintendent of New York State Police to "promulgate rules, regulations, and policies necessary to effectuate the provisions of" the Act, and provides that the superintendent "shall, prior to the effective date of this act and annually thereafter, publish a list of pistols that the superintendent has determined to be convertible pistols." 2026 N.Y.

8

LAWS ch. 55, pt. C, subpt. A § 4. Violation of the Act subjects licensed dealers and gunsmiths to prosecution for a class D felony, punishable by up to seven years' imprisonment and a fine of up to the greater of $5,000 or double the defendant's gain from the offense. *See* N.Y. PENAL LAW §§ 265.10(10), 70.00(2)(d), 80.00(1)(a).

25.     This broad ban applies to all sales, transfers, transportation, and shipping by licensed firearms dealers or gunsmiths that do not fall into one of a few specific, narrow categories. *See Id.* § 265.20(f) (effective Aug. 25, 2026). While the Act does not prohibit all transfers of previously owned "convertible pistols," it freezes the market by barring dealers and gunsmiths from selling, transferring, disposing of, transporting, or shipping new "convertible pistols" as merchandise after May 31, 2027, while preserving only a narrow grandfathered secondary market for pistols lawfully owned by private parties before that date, including private-party transactions conducted through licensed dealers and limited immediate-family transfers. *See id.*

26.     A "convertible pistol" is defined as "any semi-automatic pistol with a cruciform trigger bar that can be readily altered by hand or with common household tools so that it can be converted into a machine-gun by the installation or attachment of a pistol converter." *Id.* § 265.00(37). This definition "does not include hammer-fired semi-automatic pistols or any striker-fired semi-automatic pistol lacking a cruciform trigger bar." *Id.* The definition also provides:

> A notch, tab, or other piece of material on a pistol frame is not sufficient to prevent ready alteration so that the pistol can be converted into a machine-gun by the installation or attachment of a pistol converter, and will not prevent such pistol from qualifying as a convertible pistol under this subdivision, if such notch, tab, or other piece of material can be readily removed with common household tools.

*Id.*

27.     A "cruciform trigger bar" is defined as "a component in a semi-automatic pistol that serves as a linkage between the trigger and the firing pin and has its sear incorporated in a cross-shaped surface." *Id.* § 265.00(40).

28.     A "pistol converter" is defined as "any device or instrument that, when installed in or attached to the rear of the slide of a semi-automatic pistol, replaces the backplate and interferes with the trigger mechanism and thereby enables the pistol to discharge a number of shots or bullets rapidly or automatically with one continuous pull of the trigger." *Id.* § 265.00(36). Put differently, a pistol converter is a device that enables a pistol to function as a machinegun.

29.     A "common household tool" is defined to mean "screwdrivers, pipe wrenches, pliers, hacksaws, crowbars, electric drills or rotary tools, hammers, chisels, files, and crescent wrenches." *Id.* § 265.00(37).

30.     Pistol converters are banned under both federal and New York law.

31.     Under federal law, the definition of "machine gun" includes pistol converters. *See* 26 U.S.C. § 5845(b). With exceptions not relevant here, federal law prohibits the possession, manufacture, transfer, or receipt of a machinegun. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5861. A violation of these provisions is a felony punishable by up to ten years' imprisonment and a fine of up to $250,000. *See* 18 U.S.C. § 924(a)(2); ; 18 U.S.C. § 3571(b).

32.     Under New York law, the definition of "rapid-fire modification device" includes pistol converters. *See* N.Y. PENAL LAW § 265.00(26), (36). With exceptions not relevant here, New York law prohibits the knowing possession of any rapid-fire modification device. *Id.* § 265.01-C. A violation of this provision is a class A misdemeanor punishable by up to 364 days' imprisonment and a fine of up to $1,000. *Id.* §§ 70.15(1), 80.05(1). Manufacturing, transporting, shipping, or disposing of a rapid-fire modification device is a class E felony punishable by up to four years' imprisonment and a fine of up to the greater of $5,000 or double the defendant's gain from the offense. *Id.* §§ 265.10(1)-(3), 70.00(2)(e), 80.00(1).

10

33.     Nearly every, if not every, model of Glock and Glock-style pistol can be modified with a pistol converter to fire automatically.

34.     The federal and state prohibitions on pistol converters are not at issue in this case. This case is about whether New York may ban Glock and Glock-style handguns consistent with the United States Constitution merely because someone *can* convert those firearms into something that they are not.

## II.     THE ACT IS A BAN ON GLOCK AND GLOCK-STYLE PISTOLS

35.     All factory stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025. The cruciform trigger bar is integral to Glock's design. Among other things, it ensures that a Glock pistol will not discharge accidentally if dropped.

36.     The cruciform trigger bar was present in Glock's patented design by 1982. *See* Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025), https://perma.cc/R63R-AY6C (describing a 1982 Glock patent and noting the trigger bar had a "cruciform shape"). It has thus been a feature of Glock pistols since they were first sold in the U.S. in 1986. *See The Glock Story,* GLOCK, https://perma.cc/N92H-UXVG.

37.     When Glock's Gen 3 patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, the Ruger RXM, and many Shadow Systems handguns. Factory stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

38.     Because factory stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy the Act's definition of "convertible pistol" if they are deemed to be "readily alter[able]" into a

machine gun as described in § 265.00(37). There is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily alter[able]."

39.    To the best of Plaintiffs' knowledge, the Glock and Glock-style pistols just discussed are the only handguns that meet the Act's definition of a "convertible pistol." Section 265.10(10) functions as a ban on the sale, transfer, disposing of, shipping, or transporting as merchandise of new Glock and Glock-style pistols by ordinary citizens in the State of New York.

40.    With exceptions not relevant here, federal law prohibits a person from transferring a handgun purchased or otherwise obtained outside his State of residence into that State. *See* 18 U.S.C. § 922(a)(3). That means ordinary New Yorkers cannot acquire a Glock or Glock-style pistol in any other State.

41.    Section 265.10(10) therefore bans ordinary New Yorkers from acquiring new Glock and Glock-style pistols.

## III.    THE SECOND AMENDMENT

42.    The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. The Fourteenth Amendment incorporates this fundamental right against the States. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

43.    A law that forbids conduct covered by the Second Amendment's "plain text" is presumptively unconstitutional and can be enforced only if the government "demonstrat[es] that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022); *Wolford v. Lopez*, 146 S.Ct. 2032, 2043–44, (2026).

44.    The Second Amendment's plain text covers "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. And "handguns," the Court has held, "fall squarely into this category." *Wolford*, 146 S. Ct. at 2041 (quoting

12

*Heller*, 554 U.S. at 628). Second Circuit precedent holding that the plain text is limited to a subset of arms (those in common use), *see United States v. Gomez*, 159 F.4th 172, 177 (2d Cir. 2025), is irreconcilable with *Wolford* and therefore abrogated.

45.    The Second Amendment's protection encompasses the right to acquire these firearms. *See Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025) ("[T]he right to 'keep and bear arms' surely implies the right to purchase them." (citation omitted)); *see also, e.g.*, *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023); *Ortega v. Grisham,* 148 F.4th 1134, 1143 (10th Cir. 2025); *United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024); *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1171 (11th Cir. 2025) (en banc) (Brasher, J., dissenting).

46.    A ban on the sale or purchase of a bearable arm therefore implicates the Second Amendment's plain text.

47.    *Heller* makes clear that historical tradition supports banning a firearm *only* if it is both "dangerous and unusual." 554 U.S. at 627 (citation omitted). Arms that are "in common use" are by definition neither dangerous nor unusual. *Id*. (citation omitted). The Second Amendment thus "protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627).

48.    A law that bans the sale or purchase of a weapon in common use violates the Second Amendment.

*IV.* **GLOCK AND GLOCK-STYLE PISTOLS ARE IN COMMON USE**

49.    *Heller* held that handguns are in common use and therefore cannot be banned. *See Heller*, 554 U.S. at 629 ("handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid"). "[T]he vast majority of [handguns] . . . are semi-automatic." *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *see 2021 Firearms Retailer: Survey Report*, NSSF, at 9 (2021), https://perma.cc/N59Q-6UJJ (over 80% of handguns sold in the United States in 2020 were semi-automatic pistols); *Firearm Production in the United States*, NSSF, at 2 (2023), https://perma.cc/P6A8-DZK2 (over 80% of handguns produced in the United States between 1991 and 2021 were semiautomatic pistols).

50.    Glock and Glock-style pistols are semiautomatic pistols. They are not relevantly different from *any* other type of semiautomatic pistol. Glock and Glock-style pistols are therefore in common use.

51.    Even considered apart from other semiautomatic handguns, Glock and Glock-style pistols are "in common use" by any measure. Indeed, they are among the most popular handguns in the nation. *See How Glock Became America's Gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA.

52.    Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns. *Gaston Glock & family*, FORBES (Apr. 5, 2021), https://perma.cc/6HWX-6FFP.

53.    The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has recognized that Glocks are "popular for civilian use." *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022). And Glock pistols consistently rank among the top-selling firearms in the U.S. civilian market. *See, e.g., Best-Selling*

*Guns*, GUNS.COM (May 5, 2026), https://perma.cc/9JGJ-ZXXN (listing two Glock models in the top-five-selling handguns).

54.     Glock pistols also are widely used by law enforcement officers in the United States, *see* Kyle Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13, 2025), https://perma.cc/84HV-PTTZ ("[B]etween 40% and 65% of US law enforcement agencies . . . provide or specify Glock pistols for their officers."); *Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE ("Over 65% of federal, state and local agencies in the United States have been issued GLOCK pistols."), including in New York, *see Switch to Semi-Automatic Pistol*, N.Y. STATE POLICE, https://perma.cc/F6ER-S2UT (noting that since 1990 New York State Troopers are issued the Glock 17, 9mm semi-automatic pistol). This is noteworthy because police officers on the beat carry firearms for defensive use, just like other citizens.

55.     Government data confirms the popularity of Glock handguns. For example, in 2021, Glock manufactured 581,944 handguns in the United States. *See Annual Firearms Manufacturing and Export Report*, ATF, at 13 (2021), https://perma.cc/T6FB-YCAY. Of those, just 67,106 were exported. *Id*. at 153. Thus, in 2021 alone, Glock manufactured 514,838 handguns for sale in the United States.

56.     That is to say nothing of imports. In 2021, 5,263,341 handguns were imported into the United States. *See Firearms Commerce in the United States*, ATF, at 3 (2024), https://perma.cc/P689-LX24. Of those, 1,688,941 were imported from Austria, *id*. at 5, where many Glocks are manufactured, *see Glock Brand*, GLOCK, https://perma.cc/2UWY-EARR. This suggests that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

57.     Glock and Glock-style pistols are generally lawful to sell, acquire, and possess in the vast majority of the States.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE SECOND AND
### FOURTEENTH AMENDMENTS
### (42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908))

58.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 57.

59.     Section 265.10(10) bans the sale, transfer, disposition, transporting or shipping as merchandise of new Glock and Glock-style pistols. These handguns, like all handguns, are "arms" within the scope of the plain text of the Second Amendment. And there is no history of regulation that justifies the ban. Indeed, because the handguns banned by New York are in common use, under *Heller*, they cannot be banned.

60.     Section 265.10(10) therefore violates the Second Amendment. Defendants' enforcement of § 265.10(10) deprives Plaintiffs and Plaintiffs' members of rights secured by the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully request that this Court:

1.     Declare that § 265.10(10) is unconstitutional under the Second Amendment, both facially and as-applied;

2.     Enjoin enforcement of § 265.10(10), including any regulations adopted to implement § 265.10(10);

3.     Award Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

4.     Award Plaintiffs other legal and equitable relief as is just and appropriate.

16

Respectfully Submitted,

FLUET

Dated:   McLean, Virginia
August 13, 2026

By: /s/ *Nicolas J. Rotsko*
Nicolas J. Rotsko, Esq.

1751 Pinnacle Drive
Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
nrotsko@fluet.law

Peter A. Patterson†
William V. Bergstrom†
Cooper & Kirk, PLLC
1523 New Hampshire Ave. NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Counsel for Plaintiffs*

† Motion to appear *pro hac vice* forthcoming

17